UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID AXMANN | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-cv-01635 |
| | § | |
| U.S. ANESTHESIA PARTNERS HOLDINGS, INC. and U.S. ANESTHESIA PARTNERS OF TEXAS, P.A. | § § § | |
| | § | |
| Defendants | § | JURY TRIAL DEMANDED |

FIRST AMENDED COMPLAINT

Plaintiff, for his Complaint against Defendants, would show as follows:

Parties

1. Plaintiff is an individual over the age of 40.

2. Defendants are a corporation and a professional association, together with other legal entities, and their predecessors in interest, operating as U.S. Anesthesia Partners (collectively, "USAP"). Defendant U.S. Anesthesia Partners Holdings, Inc. ("USAPH") may be served with summons through any officer or management agent, including Robert Cowart, chief executive officer, at 12222 Merit Drive, Suite 700, Dallas Texas 75257, and Defendant U.S. Anesthesia Partners of Texas, P.A. ("USAPT") may be served with summons through any officer or management agent, including Scott Holliday, D.O.

Jurisdiction and Venue

3. The Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

FIRST AMENDED COMPLAINT – Page 1

Facts

5. Plaintiff is an anesthesiologist, with a specialty in neurological anesthesia, licensed as a physician in Texas, over age 40, age 54 as of December 16, 2021, and as such protected against age discrimination. Defendants operate a corporate medical practice under the name of USAP ("USAP") focused on provision of anesthesia services in surgery, employing physician anesthesiologists and non-physician nurse anesthetists. Plaintiff, by his virtue of training, experience and education as an anesthesiologist, and his specialty in neurological anesthesia, was qualified to hold the position of an anesthesiologist with USAP and perform the duties of it throughout his employment by USAPT.

6. Plaintiff became a stockholder of USAPH, the parent of USAP, pursuant to a Stockholders Agreement dated November 30, 2017 and was employed by USAPT between November 2017 and January 2021 by virtue of his employment by one of Defendants' predecessors in interest by acquisition, Pinnacle Anesthesia Consultants, PLLC, pursuant to a Physician-Partner Employment Agreement between Plaintiff and Pinnacle Anesthesia Consultants, PLLC dated January 6, 2014. At the time of the acquisition by USAP of Pinnacle Anesthesia Consultants, PLLC, most of the anesthesiologists with Pinnacle Anesthesia Consultants, PLLC were over 50 years of age, and Pinnacle Anesthesia Consultants, PLLC maintained a general rule of one board certified anesthesiologist in each operating room for each surgery. After the USAP acquisition, however, USAP instituted a policy whereby nurse anesthetists (generally younger than anesthesiologists) under the supervision of younger not necessarily board-certified anesthesiologists were used to staff operating rooms for each surgery, leading to many older anesthesiologists to leave USAP either by constructive discharge or

discharge as such. Prior to the termination of his employment by USAPT, Plaintiff observed this policy and resulting pattern and practice of USAP at Presbyterian Plano and HCA Columbia, hospitals in Plano, Texas where he performed anesthesia services after the purchase by USAP, through one or more legal entities, of Pinnacle Anesthesia Consultants, PLLC. Also after the purchase by USAP, through one or more legal entities, of Pinnacle Anesthesia Consultants, PLLC, USAP, through USAPH, assumed and then exercised financial control, and control over operational and human resources aspects, including involvement in employment decisions, of the business of USAPT and other like entities within USAP subsidiary to or affiliated with USAPH, and like USAPT, employing anesthesiologists and nurse anesthetists, supplanting the prior financial control, and control over operational and human resources aspects, of the business of such entities by such entities themselves. USAP, through USAPH, as USAP's parent, assumed and exercised such control by, among other things, limiting the compensation of anesthesiologists employed by such entities by instituting blended rate charging and flattening of compensation of anesthesiologists throughout the United States, resulting in flattened compensation of anesthesiologists despite differences in rates available to be charged, and resulting revenue attributable to anesthesiologists, in different parts of the United States, by instituting a centralized billing system, by instituting a centralized patient survey system and by reserving to USAP, through USAPH, and not USAPT and other like entities employing anesthesiologists and nurse anesthetists, decision-making authority regarding discipline and hiring and firing of anesthesiologists and nurse anesthetists. One or more physician employees of USAPT and other like entities employing anesthesiologists and nurse anesthetists have been members of the Clinical Operations Committee and Board of Directors of USAP or executives of USAP, through USAPH as USAP's parent. Also after the purchase by USAP, through one or more legal entities, of Pinnacle

FIRST AMENDED COMPLAINT – Page 3

Anesthesia Consultants, PLLC, USAP, through representatives of USAPH, inquired in writing of the retirement plans of anesthesiologists over 40 years of age employed by such legal entities.

7. On July 22, 2020, Plaintiff, in a meeting with a human resources representative of Defendants, Ashley Sharp, and another representative of Defendants, Dr. Stuart Simon, purportedly the chairman of Defendants' human resources committee, was subjected to patently false allegations concerning his performance as a medical professional. Such representatives initially refused to provide the substance of the allegations in writing or allow Plaintiff to respond to any such allegations. Only after the meeting, and a request by email from Plaintiff dated September 8, 2020 acknowledged by email from Ms. Sharp dated September 8, 2020, did Defendants offer a non-exhaustive list of such allegations by email from Ms. Sharp dated September 23, 2022 to which Plaintiff responded in an email dated September 28, 2020 by indicating the lack of any basis to certain of the claimed non-exhaustive list of allegations, making a request for additional information about certain of the claimed non-exhausted allegations and making a request for a complete, exhaustive list of any claimed allegations. Defendants did not provide the requested additional information or the complete exhaustive list of any claimed allegations.

8. Also on July 22, 2020, Defendants demanded that Plaintiff submit to coaching sessions from a purported physician counselor, Dr. David Teegarden, as a condition of continued employment with Defendants. By emails dated August 5, 2020, August 11, 2020, August 13, 2020 and September 23, 2020 from Ms. Sharp to Plaintiff, Ms. Sharp further reiterated the demand of Defendants that Plaintiff receive coaching sessions from Dr. Teegarden. By his email dated September 28, 2020, Plaintiff disagreed with the necessity of coaching sessions or any other review of his performance as a medical professional by Dr Teegarden. By email dated November 9, 2020

from Ms. Sharp to Plaintiff, Defendants invited Plaintiff to a meeting with a USAP human resources committee on November 12, 2020. By email dated November 12, 2020, Plaintiff expressed to Ms. Sharp his willingness to meet with the human resources committee so long as he was permitted to attend the meeting with counsel. Defendants did not agree to such a meeting with counsel. Counsel for Plaintiff further reiterated Plaintiff's willingness to meet with the human resources committee with counsel by email dated December 15, 2020. By email dated January 5, 2021 from Ms. Sharp to Plaintiff, Defendants again reiterated the demand that Plaintiff submit to coaching sessions from Dr. Teegarden and finally confirmed that Defendants would not agree to another individual for coaching sessions, and insisted that Plaintiff advise Defendants whether it would attend coaching sessions with Dr. Teegarden by January 8, 2021.

9.     Despite the baseless nature of Defendants' allegations against him and their related demand for coaching sessions with Dr. Teegarden, Plaintiff offered, including by email to Ms. Sharp dated September 28, 2020, to submit to a review by a mutually agreed-upon qualified medical professional. Defendants refused to agree to Plaintiff's offer, insisting, as indicated, by email dated January 5, 2021, that Plaintiff submit to coaching sessions only by Dr. David Teegarden. After September 28, 2020, Plaintiff and his counsel made numerous attempts to cooperate with Defendants to find another mutually agreeable and qualified candidate for coaching sessions on the assumption that Defendants' desire was for an objective review of Plaintiff's performance as a medical professional. Defendants' refusal to consider an alternative confirmed that Defendants' objective was termination of Plaintiff's employment consistent with their age-based harassment of Plaintiff as an older anesthesiologist. Defendants lacked adequate documentation of any basis for its age discriminatory demand for coaching and did not investigate Plaintiff's complaints of age-based harassment and other age discrimination. Defendants' claim of

purportedly inadequate professional performance of Plaintiff was false in all events, and Defendants did not apply its own policies relating to evaluation of clinical performance in seeking to address any purportedly inadequate professional performance by Plaintiff. Notwithstanding the claimed or implied purportedly inadequate professional performance of Plaintiff, Plaintiff continued to be scheduled in operating rooms at multiple facilities staffed by physician employees of USAPT between July 2020 and February 2021.

10. Plaintiff was, in being subjected to the treatment referred to in paragraphs 7, 8 and 9, treated in a disparate manner compared to younger anesthesiologists. Plaintiff was not the only older anesthesiologist employed by USAP, whether or not employed by USAPT or other immediate employers of USAP anesthesiologists and nurse anesthetists, subjected to such treatment or other treatment to which younger anesthesiologists were not subjected. USAP, through USAPT as USAP's parent, and other immediate employers of USAP anesthesiologists and nurse anesthetists, followed a pattern and practice between 2017 and 2021 of harassing older anesthesiologists by demands for counseling based on claims of inadequate professional conduct or misconduct as professionals, and otherwise harassing older anesthesiologists, while not doing so in the case of younger anesthesiologists, in the manner reflected in paragraphs 7, 8 and 9. The treatment of Plaintiff by USAPT referred to in paragraphs 7, 8 and 9 was an instance of such pattern and practice.

11. Plaintiff engaged in protected conduct by complaining to Defendants, including through its counsel and human resources representatives, including by an email from Plaintiff to a representative of Defendants dated September 28, 2020 and an email from his counsel dated October 9, 2020, that he was being subjected to age-based harassment and other age discrimination.

12. By letter dated January 29, 2021, USAPT involuntarily terminated Plaintiff's employment without cause. There was no need for Defendants to terminate Plaintiff. In fact, the reason for Plaintiff's termination was USAP's false allegations against Plaintiff referred to in paragraphs 7, 8 and 9. That reason and other circumstances surrounding the termination of Plaintiff constituted a pretext for age discrimination.

13. USAPT and other entities employing anesthesiologists as a part of USAP followed a pattern and practice of forcing termination by resignation or terminating older anesthesiologists while not doing so in the case of younger anesthesiologists and replacing the older anesthesiologists with younger anesthesiologists and nurse anesthetists. The treatment of Plaintiff by USAPT was an instance of such pattern and practice.

14. Since his termination, Plaintiff has suffered lost compensation and benefits, including equity benefits, associated with his employment by Defendants in an amount not less than $500,000 per year less only mitigating compensation and benefits. Apart from being the provider of equity benefits to Plaintiff, there are other connections between Defendants. The connections between Defendants include the fact that, under section 2.8 of the employment agreement between the predecessor entity to USAPT and Plaintiff governing the employment of Plaintiff by USAPT, confidentiality obligations of USAP as a whole, under the fifth recital and section 2.10 of the employment agreement, Plaintiff was subject to professional reviews by an entity referred to as Pinnacle Clinical Governance Board, including annually after age 68, under section 5.1 of the employment agreement, Plaintiff's compensation under a "Pinnacle Compensation Plan" was made payable under policies of USAP, under section 8 of the employment agreement, Plaintiff was a "Physician-Partner" as, among other things, designated by the Pinnacle Clinical Governance Board and USAP, and under section 6.25 of the employment

agreement, USAP included as part of the employment agreement a Code of Conduct governing the representation of physicians associated with USAP, including its associated clinical providers' quality care and professional demeanor, providing that any party who signs an employment agreement with USAPT will be deemed to be governed by the Code and progressive discipline, including termination and under section 10.13 of the employment agreement, the employment agreement became effective only upon a merger agreement between USAPH and other USAP entities, including USAPT. Copies of the employment agreement and attachments are annexed hereto as <u>Exhibit A</u>. The connections between Defendants also include provisions of the stockholders agreement between Plaintiff and USAPH, including the definition of "Cause" in section 1.01 permitting an involuntary repurchase of shares of a physician stockholder employee of USAPH, one or more of its Subsidiaries or an affiliated Position Practice [see definition of Physician Stockholder in section 1.01] pursuant to section 6.01(z)(i) and (ii). A copy of the stockholders agreement is annexed hereto as <u>Exhibit B</u>.  Plaintiff has not otherwise admitted that there is no employment relationship between Plaintiff and USAPH.

15.   By charge of discrimination dated October 15, 2021, Plaintiff filed a charge of discrimination asserting a claim of age discrimination against USAP and all affiliated entities, and by notice of right to sue from the Equal Employment Opportunity Commission dated May 16, 2022, Plaintiff was granted a notice of right to sue on his claims of age discrimination and retaliation under the Age Discrimination in Employment Act arising from the charge, and has filed this action within the time permitted by the notice of right to sue. Copies of the charge of discrimination and notice of right to sue and attachments are annexed hereto as <u>Exhibit C</u>.

<u>Claims</u>

16.     Plaintiff would show that he was subjected by Defendants to discrimination on the basis of age in violation of the Age Discrimination in Employment Act, and is entitled to recover his actual damages, liquidated damages, attorney's fees, prejudgment interest and costs of court.

17.     Plaintiff would show that he was subjected by Defendants to retaliation in violation of the Age Discrimination in Employment Act, and is entitled to recover his actual damages, liquidated damages, attorney's fees, prejudgment interest and costs.

18.     Plaintiff demands a jury.

WHEREFORE, Plaintiff prays for the relief referred to in paragraphs 13 and 14 and all other relief to which he may be entitled.

Respectfully submitted,

/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.
State Bar No. 08158100
reg@kilgorelaw.com
Kilgore & Kilgore, PLLC
3141 Hood Street, Suite 500
Dallas, Texas 75219
(214) 379-0843 Telephone
(214) 379-0840 Telecopy

ATTORNEY FOR PLAINTIFF

CERTIFICATE OF SERVICE

      I hereby certify that the foregoing was served on all parties in this matter using the electronic filing system of this Court and/or by email on September 12, 2022.

Jennifer A. Youpa
jyoupa@littler.com
Matthew A. Swanger
mswanger@littler.com
Littler Mendelson, P.C.
2001 Ross Avenue
Suite 1500, Lock Box 116
Dallas, Texas 75201

                                                               /s/ Robert E. Goodman, Jr.
                                                               Robert E. Goodman